UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN THE MATTER OF
THE EXTRADITION OF                    Case No. 8:21-mj-1246-JSS
KENDRICK TAYLOR WALLACE

_____/

### ORDER DENYING EXTRADITION

The United States of America, on behalf of the Kingdom of Norway, seeks the

extradition of Kendrick Taylor Wallace, pursuant to The Extradition Treaty between

United States of America and the Kingdom of Norway, U.S.-Nor., June 9, 1977, 31

U.S.T. 5619 ("Extradition Treaty").   After conducting an evidentiary hearing and

reviewing the parties' written submissions, the Court finds the evidence presented

insufficient "to sustain the charge under the provisions of the proper treaty or convention."

18 U.S.C. § 3184.  In accordance with Article 7 of the Extradition Treaty, extradition of

Wallace will not be granted because the prosecution for the offenses for which extradition

is sought has become barred by lapse of time according to the laws of the requested State,

*i.e.*, the United States of America.   Accordingly, extradition is denied, the Complaint

(Doc. 1) is dismissed, and the Order of Detention (Doc. 12) revoked.

### BACKGROUND[1]

From 2004 until his retirement in the summer of 2008, Wallace served as both the

Chief Legal Officer and a member of the corporate management team of Yara

_____

[1] The following summary is taken from the United States' Memorandum of Law in
Support of Extradition (Doc. 19) (internal citations omitted).

International ASA ("Yara"), one of the world's largest producers of mineral fertilizers. According to the documentation provided by Norway, while serving as Yara's Chief Legal Officer, Wallace assisted the company with entering into two separate agreements to pay bribes—parts of which were in fact paid—first, to a Libyan government official and second, to an Indian government official, each in connection with negotiations to establish joint venture agreements concerning fertilizer production with state-controlled companies in Libya and India, respectively.   The bribes were orchestrated under the guise of consultancy agreements with the sons of the two foreign public officials.

*Bribes to Libyan Official*

In early 2007, while Yara was negotiating a joint venture with the state-owned Libyan oil company National Oil Company ("NOC"), Wallace entered into an agreement to pay $4.5 million to Mohamed Ghanem ("Ghanem"), son of Shukri Ghanem, Libya's then Minister of Petroleum and NOC's Chairman of the Board.  In particular, Wallace, on behalf of Yara, and Ghanem, on behalf of a company called Saudi Logistics and Support ("SALT"), drafted a consultancy agreement, pursuant to which Yara would pay SALT an initial retainer of $1.5 million, followed by a $3 million "closing fee," purportedly for assistance with major construction and logistics projects in the Middle East.  At the time, Ghanem was employed at a bank in Bahrain and had limited work or other relevant experience.  Although the draft consultancy agreement was not ultimately signed, Wallace and Ghanem entered into a similar oral agreement.  Pursuant to that oral agreement, on March 29, 2007, Yara transferred $1.5 million to a Swiss bank account held by Golden Petal Ltd., a company controlled by Ghanem.  In the summer of 2008,

2

Ghanem contacted Wallace asking for additional payments in line with their oral agreement; however, by that point Wallace had retired and no more money was paid to Ghanem or his company.  No evidence suggests that Ghanem provided the services set forth in the draft consultancy agreement.

In February 2007, Ghanem informed Wallace that the Libyan government had approved the joint venture between NOC and Yara, and the companies signed a contract on April 25, 2007.  In September 2007, Wallace met with Ghanem, who provided advice regarding various terms of the joint venture.  Wallace shared that advice with others at Yara so that it could be used in subsequent negotiations with Ghanem's father.  The joint venture framework was finalized in February 2009.

### *Bribes to Indian Official*

In April 2007, while Yara was negotiating a joint venture with the Indian-controlled company Krishak Bharati Cooperative Limited ("KBCL"), which was overseen by the Indian Ministry of Chemicals and Fertilizers, Wallace entered into an agreement to pay $3 million over a three-year period to Gurpreteesh Singh Maini ("Maini"), son of Jivtesh Singh Maini, India's then Additional Secretary and Financial Adviser in the Ministry of Chemicals and Fertilizers and also a member of KBCL's board. While Wallace initially offered to hire Maini—who had neither experience nor competence in the fertilizer industry—purportedly as Yara's agent in India for $250,000 plus additional amounts, including commissions for any sales Yara made with Maini's assistance, Wallace subsequently revised the one-off disbursement offer into the $3 million

payment, to be made in installments of $1 million per year during the period of January 1, 2007, through December 31, 2009.

This consultancy agreement was finalized in June 2007. The first $1 million payment was made on October 16, 2007. At Maini's request, Yara transferred the money to an account in Hong Kong belonging to Krystal Holdings & Investments Limited, a company owned by a trust, the beneficiaries of which are Maini's wife and mother. No evidence suggests that Maini provided the services agreed to under the consultancy agreement, but rather that he assisted only with passing information between Yara and his father. The venture project with KBCL was ultimately terminated in the summer of 2008.

### Prosecution by Norway

On January 15, 2014, Wallace and three other members of Yara's management team were indicted in Norway on two counts of active, aggravated corruption—one concerning the $4.5 million bribe in Libya and one concerning the $3 million bribe in India. They were tried before the Oslo District Court from January 5, 2015, to March 26, 2015. Wallace was present and testified in his own defense. Almost 7,000 documents were presented to the court (although not all were entered into evidence), and 33 lay witnesses and one expert witness testified. On July 7, 2015, the Oslo District Court entered its judgment finding Wallace guilty of both counts and sentenced him to a term of imprisonment of two years and six months (with credit for the three days he had spent detained in Norway). The court also convicted Wallace's codefendants (with the exception of acquitting one codefendant of one count).

Wallace and his codefendants appealed the judgment of the Oslo District Court to the Borgarting Court of Appeal. In so doing, pursuant to Norwegian law, Wallace and his codefendants received a new trial. The new trial lasted from August 23, 2016, to December 2, 2016, and Wallace was present and testified in his own defense. On January 17, 2017, the Borgarting Court of Appeal found Wallace guilty of both counts of the indictment and sentenced him to a seven-year term of imprisonment, though it acquitted Wallace's codefendants. Wallace appealed the ruling of the Borgarting Court of Appeal, alleging procedural errors at the trial and wrongful application of the law and challenging the length of his sentence. On September 15, 2017, the Supreme Court of Norway affirmed the judgment.

### Proceeding in this District

On March 17, 2021, the United States, in accordance with its obligations under the Extradition Treaty and pursuant to 18 U.S.C. § 3181 et seq., filed a complaint (Doc. 1) in this Middle District of Florida seeking a warrant for Wallace's arrest. This Court issued an arrest warrant (Doc. 2), which was executed on April 12, 2021 (Doc. 6). Following his initial appearance, Wallace was detained pending extradition (Doc. 12). On April 20, the Court held an extradition hearing.

## ANALYSIS

The power to extradite derives from the President's power to conduct foreign affairs. *See generally* U.S. Const. art. II, § 2, cl. 2. Extradition, therefore, is an executive, not a judicial, function. *Martin v. Warden*, *Atlanta Pen*, 993 F.2d 824, 828 (11th Cir. 1993). The judiciary serves an independent, but limited, review function delegated to it by the

Executive and defined by statute. *Id.* After conducting an extradition hearing, the Court is tasked solely with determining whether the evidence presented is "sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b)." 18 U.S.C. § 3184. If the evidence is sufficient, the court "makes a finding of extraditability and certifies the case to the Secretary of State." *Martin*, 993 F.2d at 828. A court must make this certification where: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought; and (5) the crimes for which surrender is requested are covered by the applicable treaty. *See In re Extradition of Jose Batista Do Nascimento*, No. 620CV2041ORL40GJK, 2021 WL 1192144, at *2 (M.D. Fla. Jan. 25, 2021); *In re Extradition of Shaw*, No. 14-cv-81475, 2015 WL 3442022, at *5 (S.D. Fla. May 28, 2015) (citing *Fernandez v. Phillips,* 268 U.S. 311, 312 (1925)).

## A. AUTHORIZED TO CONDUCT EXTRADITION PROCEEDING

The extradition statute authorizes proceedings to be conducted by "any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State." 18 U.S.C. § 3184. "A United States magistrate judge in the Middle District [of Florida] can exercise the maximum authority and perform any duty permitted by the Constitution and other laws of the United States." L.R. 1.02(a), M.D. Fla.; *see* In re Authority of U.S. Magistrate Judges in the Middle District of Florida, No. 8:20-mc-100-T-23, Doc. 3 (M.D.

Fla. Oct. 29, 2020) (illustrating magistrate judges' authority to handle extradition matters required by 18 U.S.C. § 3184). Therefore, the undersigned is authorized to conduct extradition proceedings.

### B.  JURISDICTION OVER WALLACE

It is well settled that a court has jurisdiction over a fugitive found within its jurisdictional boundaries. *See Matter of Extradition of Damas*, No. 18-80770-MC-UNA/DLB, 2018 WL 11188079, at *3 (S.D. Fla. Nov. 29, 2018); 18 U.S.C. § 3184 (a court "may, upon complaint made under oath, charging any person found within his jurisdiction, . . . issue [its] warrant for the apprehension of the person so charged"). Here, Wallace was arrested in the Middle District of Florida (Doc. 6). Accordingly, this Court has jurisdiction over Wallace.

### C.  RELEVANT TREATY IS IN FULL FORCE AND EFFECT

An attorney in the Office of the Legal Adviser for the United States Department of State has submitted a declaration attesting that "[t]he relevant and applicable treaty provisions in full force and effect between the United States and Norway are found in the Extradition Treaty between the United States of America and the Kingdom of Norway, signed on June 9, 1977" (Doc. 28-1). The Eleventh Circuit has instructed that courts "must defer to the determination of the executive branch in deciding whether an extradition treaty remains in force." *Arias Leiva v. Warden*, 928 F.3d 1281, 1288 (11th Cir. 2019) (internal quotation marks omitted). Accordingly, the Court finds the Extradition Treaty to be in full force and effect.

7

## D. EVIDENCE ESTABLISHES PROBABLE CAUSE THAT WALLACE COMMITTED THE OFFENSES

The Court now turns to whether there is probable cause to believe that the crimes charged by Norway were committed by Wallace.  The evidence is sufficient, and probable cause is established, if it would cause a "prudent man" to "believ[e] that the (suspect) had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975) (internal quotation marks and citation omitted).  To establish probable cause, Norway submits copies of the three judgments[2] against Wallace: (1) Judgment by Oslo District Court, dated July 7, 2015; (2) Judgment by Borgarting Court of Appeal, dated January 17, 2017; and (3) Judgment by the Norwegian Supreme Court, dated September 15, 2017 (Doc. 28-2). Evidence establishing probable cause "can of course include the fact that a foreign tribunal has convicted the defendant." *Arias Leiva*, 928 F.3d at 1294; *see Haxhiaj v. Hackman*, 528 F.3d 282, 290 (4th Cir. 2008) ("A foreign conviction entered after a trial at which the defendant was present suffices, in and of itself, to establish probable cause."); *Spatola v. United States*, 925 F.2d 615, 618 (2d Cir. 1991) ("'[A] certified copy of a foreign conviction, obtained following a trial at which the defendant was present' constitutes sufficient evidence [to establish probable cause]."); *see also* RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 476 cmt. b (AM. L. INST. 1987) ("With respect to persons whose extradition is sought after conviction in the requesting

---

[2] Article 11(4) of the Extradition Treaty requires that the requesting country provide "the judgment of conviction and sentence, if any, imposed in the territory of the requesting State, and by a certification indicating that the sentence has not been served or indicating the part of the sentence yet to be served."

state, the requirement [of probable cause] is met by proof of the judgment of conviction and, where appropriate, of sentence."). After reviewing the judgments from Norway, the Court is satisfied that there is probable cause to believe Wallace committed the crimes of conviction.

### E.  CRIMES COVERED BY THE EXTRADITION TREATY

Article 2 of the Extradition Treaty provides that "[e]xtradition shall be granted for any offense described in the Schedule [of Offenses] annexed to" the Extradition Treaty. The Schedule of Offenses, in turn, lists "[a]n offense against the laws relating to bribery, including soliciting, offering and accepting bribes" as an extraditable offense.  Wallace was convicted of two counts of gross corruption in violation sections 276a and b of the Norwegian Penal Code (Doc. 28-2).  Section 276a, in relevant part, provides that "[a]ny person who for himself or other persons requests or receives an improper advantage or accepts an offer thereof in connection with a position, office or assignment . . . shall be liable to a penalty of corruption."  The section further clarifies that a "position, office or assignment" includes those in a foreign country.  Therefore, the Court finds that Wallace was convicted of "offense[s] against the laws relating to bribery" as set forth in the Schedule of Offenses.  The analysis does not end there, however, as the Court also must determine whether the dual criminality provision found in Article 2(1)(a) & (b) of the Extradition Treaty is satisfied and whether extradition is barred by the lapse of time provision in Article 7(1)(b).

9

### 1. *Dual Criminality*

Dual criminality mandates that a fugitive be extradited only for conduct that constitutes a serious offense in both the requesting and requested state. *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1306 (11th Cir. 2000); *see also United States v. Herbage*, 850 F.2d 1463, 1465 (11th Cir. 1988) ("In short, an individual will be extradited under a treaty containing a double criminality provision only when his actions constitute an offense in both the requesting and requested states.").  The dual criminality provision found in Article 2(1)(a) & (b) of the Extradition Treaty provides that an offense is extraditable only when the laws of both Norway and the United States provide a possible penalty of deprivation of liberty for a period of more than one year, or by the death penalty.[3]  Under section 276b of the Norwegian Penal Code, "[g]ross corruption shall punishable by imprisonment for a term not exceeding 10 years."  Consequently, the offenses of conviction under Norwegian law provided a possible penalty of more than one-year imprisonment.  In fact, Wallace was sentenced to seven-years' imprisonment (Doc. 28-2).

In the United States, the anti-bribery provision of the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. § 78dd-2, provides in relevant part:

> It shall be unlawful for any domestic concern,[4] other than an issuer which is subject to section 78dd–1 of this title, or for any officer,

---

[3] Article 2(2) of the Extradition Treaty also requires that the time remaining for Wallace to serve on his sentence must be at least four months.  He has not yet served any of his seven-year sentence.

[4] "The term 'domestic concern' means—(A) any individual who is a citizen, national, or resident of the United States; and (B) any corporation, partnership, association, joint-stock company, business trust, unincorporated organization, or sole proprietorship which has its principal place of business in the United States, or which is organized under the laws

10

director, employee, or agent of such domestic concern or any stockholder thereof acting on behalf of such domestic concern, to make use of the mails or any means or instrumentality of interstate commerce[5] corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to— . . .

(3) any person, while knowing that all or a portion of such money or thing of value will be offered, given, or promised, directly or indirectly, to any foreign official . . . for purposes of—

    (A)(i) influencing any act or decision of such foreign official . . . in his or its official capacity, (ii) inducing such foreign official . . . to do or omit to do any act in violation of the lawful duty of such foreign official . . . , or (iii) securing any improper advantage; or

    (B) inducing such foreign official . . . to use his or its influence with a foreign government or instrumentality thereof to affect or influence any act or decision of such government or instrumentality, in order to assist such domestic concern in obtaining or retaining business for or with, or directing business to, any person.

15 U.S.C. § 78dd-2(a). A person who willfully violates this subsection may be imprisoned for not more than five years.  15 U.S.C. § 78dd-2(g).

Here, Wallace was convicted of offering, and paying, money, in his capacity as an officer of a public Norwegian company, to the sons of officials in Libya and India in an attempt to secure joint ventures with state-owned companies in those countries.  As the

---

of a State of the United States or a territory, possession, or commonwealth of the United States." 15 USC § 78dd-2(h)(1).

[5] Article 2(5) of the Extradition Treaty provides that dual criminality may be satisfied irrespective of "when the use of the mails or means of interstate communication or transport may be required for the purposes of granting jurisdiction to a federal tribunal of the United States."

Borgarting Court of Appeal in Norway held, Wallace intended the money to secure "an improper advantage" in negotiations regarding the joint ventures, and the money was "in reality" offered to the officials themselves in connection with their positions in the foreign governments and in the state-owned companies. Accordingly, if Wallace's acts occurred in the United States, he would be in violation the anti-bribery provision of the FCPA. *See United States v. Kay*, 359 F.3d 738, 754 (5th Cir. 2004) (The FCPA "prohibits payments to foreign officials not just to buy any act or decision, and not just to induce the doing or omitting of an official function . . . but also the making of a payment to such a foreign official to secure an 'improper advantage' that will assist in obtaining or retaining business." (citations omitted)).  As a result, the dual criminality requirement is satisfied.

### 2.  Lapse of Time

Pursuant to Article 7(1)(b) of the Extradition Treaty, "[e]xtradition shall not be granted . . . [w]hen the prosecution or the enforcement of the penalty for the offense of which extradition is sought has become barred by lapse of time according to the laws of the requesting or requested State."  The parties do not dispute that the term "lapse of time" refers to the applicable statute of limitations.  Indeed, for over a century, the term "lapse of time" has been commonly associated with a statute of limitations violation. *Yapp v. Reno*, 26 F.3d 1562, 1567 (11th Cir. 1994) (citing RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 476 cmt. e; 1 JOHN B. MOORE, A TREATISE ON EXTRADITION AND INTERSTATE RENDITION § 373 (1891)).

The parties disagree as to interpretation of Article 7(1)(b) of the Extradition Treaty as it relates to persons already convicted of an offense.  Wallace contends that, regardless

of whether he has been convicted, the Extradition Treaty prohibits extradition when the prosecution for the offense fot which extradition is sought has become barred by lapse of time.  The United States, however, contends that because Wallace has been convicted, only the statute of limitations for enforcement of the penalty applies.[6]

This Court, like others, is loath to override the position of the United States on matters of extradition.  *Arias Leiva*, 928 F.3d at 1289.  However, this issue requires the Court to interpret Article 7(1)(b), and "[o]n matters of construction, courts have the final word; the views of the Executive, while important, are 'not conclusive.'"  *Id.* (citing *Factor v. Laubenheimer*, 290 U.S. 276, 295 (1933)).  The Court must exercise its "independent duty to interpret treaties—extradition or otherwise—just as [it would] do for any statute, Constitutional provision, or other source of law."  *Id.*

i.      *Interpretation of Article 7*

In interpreting Article 7, the Court begins, as it must, with the text of the Extradition Treaty.  *United States v. Alvarez–Machain*, 504 U.S. 655, 663 (1992) ("In

---

[6] Under the laws of the United States, there is no separate and distinct limitations period for the enforcement of sentences. *See, e.g., Martinez v. United States*, 828 F.3d 451, 458 (6th Cir. 2016) (en banc) (stating that limitations periods pertaining to the enforcement of penalties are "generally unknown in the United States" even though common in civil law countries); *Yapp*, 26 F.3d at 1568 (noting that, in comparison to the United States, civil law countries often have statutes of limitations that refer to the time period by which a person must begin serving his sentence); RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 476 cmt. e (discussing lapse-of-time provisions in extradition treaties and stating that "[u]nder the law of the United States and of most common law countries, there is no period of limitations for enforcement of sentences, so that if a person is duly convicted and escapes, either from confinement or pending confinement, he may be returned to serve out his sentence, regardless of when he is captured or when a request is made for his extradition").

13

construing a treaty, as in construing a statute, [courts] first look to its terms to determine its meaning."). If the language of a treaty, as here, is clear and unambiguous, the Court must apply the words of the treaty as written. *Garcia-Godos v. Warden*, No. 20-13090, 2021 WL 1561352, at \*4 (11th Cir. Apr. 21, 2021) (citing *United States v. Duarte-Acero*, 208 F.3d 1282, 1285 (11th Cir. 2000)). Article 7(1)(b) clearly states that an "[e]xtradition shall not be granted . . . [w]hen the prosecution *or* the enforcement of the penalty for the offense of which extradition is sought has become barred by lapse of time according to the laws of the requesting or requested State." (Emphasis added). The plain meaning of the words indicate that extradition cannot be granted when, in the alternative, the prosecution or the enforcement of the penalty is barred by a statute of limitations. *See Van Wersch v. Dep't of Health & Hum. Servs.*, 197 F.3d 1144, 1151 (Fed. Cir. 1999) ("To adopt the reading of the statute that the government urges would require us to ignore the meaning of the word 'or' that the dictionary, common sense, and the experience of life all bring to us. There simply is no way around the fact that, in the English language, the word 'or' unambiguously signifies alternatives.").

The United States' contrary interpretation requires the inclusion of a condition precedent—whether there has been a conviction—that is absent from the text of Article 7. Courts, however, do not have the authority to add provisions to a treaty. *See Arias Leiva*, 928 F.3d at 1289 ("[T]here is a critical difference between the power 'to construe a treaty' and the power 'to make' one."). Moreover, when Article 7 is read in context with other parts of the Extradition Treaty, the intent of the signatory nations is more apparent. *See Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 534 (1991) ("When interpreting a treaty, courts

14

must first look at the text of the treaty and the context in which the written words are used.").  For example, Article 11 of the Extradition Treaty provides in relevant part:

> 3. If the request relates to a person charged but not yet convicted, it must also be accompanied by a warrant of arrest issued by a judge. . .

> 4. If the request relates to a person who has been convicted but who has not served all of his or her sentence, it must also be accompanied by the judgment of conviction. . .

There, the United States and Norway expressly agreed that Article 11 applied differently depending on whether the person had been convicted of an offense.  In contrast, Article 7 expresses no such agreement.  The wording of Article 7, compared to the wording of Article 11, suggests that the drafters did not intend for Article 7 to have a different application depending on whether a person was convicted of an offense.

Even looking beyond the written words of Extradition Treaty, the United States has not offered, and the Court has not uncovered, any evidence from the history of the Extradition Treaty or the negotiations to support the United States' augmented interpretation. *See Eastern Airlines*, 499 U.S. at 534–35 ("[T]reaties are construed more liberally than private agreements, and to ascertain their meaning [courts] may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." (internal quotation marks omitted)).  For example, in the Letter of Transmittal from the Department of State to President Jimmy Carter, it merely states:

> Article 7 further precludes extradition where prosecution or enforcement of the penalty for the offense for which extradition is sought has become barred by lapse of time according to the laws of the requesting or requested State.

15

Letter of Transmittal, dated May 30, 1979 (Attached hereto as Exhibit A). Thus suggesting that the plain meaning of the words in Article 7 required no further explanation.

It is the Court's "responsibility to give the specific words of the treaty a meaning consistent with the shared expectations of the contracting parties." *Air France v. Saks*, 470 U.S. 392, 399 (1985). Therefore, it would be "particularly inappropriate for [this Court] to sanction a deviation from the clear import of a solemn treaty between this Nation and a foreign sovereign, when ... there is no indication that application of the words of the treaty according to their obvious meaning effects a result inconsistent with the intent or expectations of its signatories." *Maximov v. United States*, 373 U.S. 49, 54 (1963); *see also* RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 325(1) ("An international agreement is to be interpreted in good faith in accordance with the ordinary meaning to be given to its terms in their context and in light of its object and purpose."). Accordingly, the Court finds that the Extradition Treaty prohibits extradition when either the prosecution or the enforcement of the penalty for the offense of which extradition is sought has become barred by the statute of limitations of either Norway or the United States.

*ii.   Applying the Statutes of Limitations*

The parties agree that Wallace's prosecution was not time barred by Norwegian law. Norway also explained that, under its law, the sentence imposed on Wallace may be executed up until fifteen years from when it became final on September 15, 2017 (Doc.

16

28-2 at 14).  Accordingly, neither the prosecution nor enforcement of Wallace's sentence has become barred by Norwegian law.

The applicable United States statute of limitations provides "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a).[7]  According to the Supreme Court of Norway, "[t]he criminal acts were committed in 2007" (Doc. 28-2 at 259), and Wallace was indicted on January 15, 2014 (*id.* at 252), more than five years after the criminal acts were committed. Therefore, the offenses for which extradition are sought would be barred by the United States' statute of limitations unless such period was tolled or suspended.

The United States suggests that the statute of limitations "may have been tolled . . . while Norway was seeking evidence from other countries, pursuant to 18 U.S.C. § 3292" (Doc. 19 at 24 n. 14).  That statute provides:

> Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

18 U.S.C. § 3292(a).  In support of the application of this tolling statute, the United States offered a statement from Esben Kyhring, Norwegian Senior Public Prosecutor, which

---

[7] It should be noted that the United States statute of limitations bars not only the prosecution of, but also the punishment for, any offense that was not charged timely.

indicated that during the period from June 2011 to January 2015, Norway made mutual legal assistance requests to twelve different countries (Doc. 28-3).  Accordingly, the Court finds by a preponderance of the evidence that official requests were made to foreign countries.  As to the next prong, however, the United States failed to make a showing such that a court could find "that it reasonably appears, or reasonably appeared at the time [each] request was made, that such evidence [of the offense] is, or was, in such foreign country."  18 U.S.C. § 3292(a).  The United States offers only vague descriptions of the requests sought, *e.g.*, "company information," "interview," and "search and seizure."  *Id.* With just this showing, a court could not have suspended the running of the statute of limitations, and the United States' argument that the statute of limitations "may have been tolled" is unavailing.

## CONCLUSION

For the foregoing reasons, the Court finds the evidence presented insufficient to sustain the charges under the provisions of the Extradition Treaty as required by 18 U.S.C. § 3184.  Under Article 7(1)(b) of the Extradition Treaty, Wallace cannot be extradited because the prosecution for the offense of which extradition is sought has become barred by lapse of time according to the laws of the United States, specifically 18 U.S.C. § 3282(a).

Accordingly, it is hereby **ORDERED:**

1. The United States' request to certify that Norway has submitted evidence sufficient to sustain the charges under the provisions of the proper treaty or convention is **DENIED**.

2.  The Complaint (Doc. 1) is **DISMISSED**.

3.  The Court's Order of Detention (Doc. 12) is **VACATED**.

4.  Wallace is **RELEASED** from custody.

5.  Wallace's Motion for Reconsideration of Order of Detention (Doc. 25) is **DENIED AS MOOT**.

6.  The Clerk of Court is directed to terminate all pending motions and close the case.

    **ORDERED** in Tampa, Florida on June 11, 2021.

    _____

    SEAN P. FLYNN
    UNITED STATES MAGISTRATE JUDGE